USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
CARLO NOVELLA, On His Own Behalf And On   :
Behalf Of All Similarly Situated,         :
                                          :
                    Plaintiff,            :
                                          :    05 Cv. 2079 (BSJ)
           v.                             :
                                          :
                                          :    **OPINION AND ORDER**
EMPIRE STATE CARPENTERS PENSION FUND,     :
As Successor of the Westchester County,   :
New York Carpenters' Pension Fund, and    :
THE BOARD OF TRUSTEES OF THE EMPIRE       :
STATE CARPENTERS PENSION FUND,            :
                                          :
                    Defendant.            :
------------------------------------------x
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

     Pursuant to the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et. seq. (2000), Plaintiff

Carlo Novella brought this action against Defendants Empire

State Carpenters Pension Fund, as successor of the Westchester

County, New York Carpenters' Pension Fund (the "Fund"), and

Board of Trustees of the Empire State Carpenters' Pension Fund

(the "Trustees") (collectively, "Defendants") to increase his

disability pension.  Novella claims that Defendants

miscalculated his pension by failing to award him pension

credits for time during which he collected workers' compensation

benefits.  Both parties now move for summary judgment.  For the

1

reasons that follow, the Court DENIES Novella's motion and

GRANTS Defendants' cross-motion.

## BACKGROUND[1]

Unless otherwise noted, the following facts are undisputed.

From 1962 through 1995, Novella worked as a carpenter in

Westchester County and New York, New York.  Over that time,

Novella participated in the Fund, and his pension benefits from

the Fund are determined under the Fund's pension plan (the

"Plan"), which has been in effect since January 1, 1986.  Plan

participants earn pension credits based on their hours of

service in jobs that are covered by the Plan.   (Plaintiff's

Local Rule 56.1 Statement[2] ("Pl.'s 56.1"), ¶¶ 1-2, 6; Novella I

at *1.)

On March 22, 1995, Novella suffered a disabling accident at

work, as a result of which he began receiving workers'

compensation benefits, retroactive to March 27, 1995.  Novella

began receiving disability pension benefits from the Fund on the

---

[1] This case signifies Novella's second lawsuit claiming entitlement to
additional pension credits based upon his receipt of New York State Workers'
Compensation Benefits (the "WC Claim").  See Novella v. Westchester County,
New York Carpenters' Pension Plan, No. 02 Civ. 2192 (MBM), 2004 WL 1752820
(S.D.N.Y. Aug. 4, 2004) (Novella I) (granting Novella summary judgment as to
claim that defendants' application of two different benefit rates to his
pension violated Plan terms; dismissing WC Claim for failure to exhaust
administrative remedies); (MBM), 2004 WL 3035405 (S.D.N.Y. Dec. 29, 2004)
(Novella II); 443 F.Supp.2d 540 (S.D.N.Y. 2006) (Novella III) (certifying
case as class action); (JCF), 2007 WL 2582171 (S.D.N.Y. Sept. 10, 2007)
(Novella V); (BSJ), 2008 WL 1743342 (S.D.N.Y. Jan. 14, 2007) (Novella VI)
(granting Novella summary judgment).  The Court presumes familiarity with
these decisions and with Novella IV, No. 05 Civ. 2079 (JCF), 2007 WL 2417303
(S.D.N.Y. Aug. 28, 2007), issued in this action.
[2] The Court only refers to the parties' Rule 56.1 Statements for facts in
support of which they cite admissible evidence.

effective date of July 1, 1995, or October 1, 1995.[3]   His

disability pension was based on his hours of service up to March

22, 1995; the amount of his pension did not account for his

receipt of workers' compensation benefits.   (Pl.'s 56.1, ¶¶ 4-5,

7; Novella I at *1-2; Novella IV at *1.)

On December 6, 1995, Novella wrote to the Trustees to

protest the calculation of his pension benefit.   (Defendants'

Rule 56.1 Statement ("Defs.' 56.1"), ¶ 19.)   On May 9, 1996, the

Fund responded that its calculation of his pension benefit was

correct.   (Id., ¶ 20.)   After a series of letters between

Novella and the Fund, on August 28, 1997, Novella "for the first

time received an explanation of how my pension was calculated."

(Id., ¶ 21.)

On March 19, 2002, Novella filed his first suit, alleging

that his pension had been miscalculated in two ways and that the

Fund's pension scheme violated various provisions of ERISA.   On

August 4, 2004, then-Chief Judge Mukasey granted summary

judgment for Novella on the first of his two claims, but

dismissed the WC Claim for failure to exhaust administrative

remedies.   See Novella I.

---

[3] The parties present conflicting evidence as to this date.  A January 30,
1996 letter from Fund Administrator Carole A. Staub informed Novella, "you
will receive a pension of $434 per month beginning with the month of 7/1/95."
(Affirmation of Robert T. McGovern ("McGovern Aff."), Ex. 15).  But a June
10, 1997 letter indicates that October, 1995 was the effective date of
Novella's disability pension.  (Plaintiff's Affirmation In Support of Motion
("Pauk Aff."), Ex. D.)

3

On November 4, 2004, Novella's counsel, Mr. Pauk, wrote to the Fund, on Novella's behalf, to request additional pension credits "on account of his receipt of workers' compensation benefits, which were awarded to him on April 24, 1995, retroactive to March 27, 1995." That letter requests credit for 501 Hours of Service, pursuant to Section 1.15(b) of the Plan, and asks for certain documents. (Defs.' 56.1, ¶ 2; Pauk Aff., Ex. F.) On December 6, 2004, defense counsel forwarded a letter from the Fund to Mr. Pauk acknowledging Novella's request and asking for additional information, including "[t]he period of time for which Novella is seeking Pension Credits on account of his receipt of workers' compensation benefits." (Defs.' 56.1, ¶ 3.) On December 8, 2004, Mr. Pauk responded, "[t]he period of time for which Mr. Novella is seeking Pension Credits on account of his receipt of workers' compensation benefits is the period immediately following his date of injury." (Id., ¶ 4.) Thereafter, the parties' counsel exchanged several letters concerning Novella's claim, his demand for documents, and Mr. Pauk's practice of bypassing defense counsel to communicate directly with the Fund. (Id., ¶ 5.)

Before receiving any decision on his claim, Novella filed this suit on February 14, 2005, asserting the same WC Claim that Novella I dismissed as unexhausted. Novella IV, at *2. By letter dated January 23, 2006 (the "Decision"), the Fund

4

informed Mr. Pauk of the Trustees' denial of his claim and

determination that "while under the terms of the Westchester

Plan Mr. Novella is entitled to vesting credit as a result of

his receipt of workers' compensation benefits in 1995, the grant

of additional vesting credits will not affect the amount of his

pension benefits."  (McGovern Aff., Ex. 12.)  The three-page

Decision sets forth and considers seven Plan provisions and two

provisions of the Plan's Summary Plan Description ("SPD"),

concluding:

> Based upon the foregoing, a Participant may not
> receive Pension Credit for time when s/he is not
> working in Covered Employment, which means working for
> an employer who is making contributions to the Fund.
> Therefore, a Participant cannot receive Pension
> Credits at the time he or she either is receiving
> workers' compensation benefits based upon his or her
> inability to work or is already in pay status and
> receiving a pension.
>
> As both the Westchester Plan and the SPD make clear,
> Mr. Novella cannot receive Pension Credit for time he
> was not in Covered Employment.  Pursuant to Section
> 1.09 of the Plan, the term "'Covered Employment' means
> employment of an Employee by an Employer for which the
> Employer is obligated by its agreement to contribute
> to the Fund."  In Mr. Novella's case, he admittedly
> was not in Covered Employment during the time he
> received workers' compensation benefits based upon his
> disability.  Because Mr. Novella was not in Covered
> Employment while he received workers' compensation
> benefits, under the terms of the Plan he could not
> earn additional Pension Credits.

(Id.)  On March 9, 2006, Mr. Pauk rejected the Decision as

untimely, informing the Fund's Director that he considered the

5

Decision to "be of no effect."   (Defs.' 56.1, ¶ 18; Pl.'s 56.1, ¶ 13; McGovern Aff. Ex. 13.)

Novella moved for summary judgment with regard to liability, reserving issues of damages and class certification, on November 30, 2007.   Defendants cross-moved for summary judgment on January 7, 2008.

## DISCUSSION

Defendants contend that (1) Novella's claim is time-barred, and (2) on its merits, Novella's claim fails whether the Court reviews the Decision under a deferential or de novo standard of review.   The Court agrees with both of these contentions.

### 1. Statute of Limitations

A six-year statute of limitations governs Novella's claim. See Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001).   Defendants argue that Novella's claim accrued no later than August 27, 1997, when Novella avers that he "for the first time received an explanation of how my pension was calculated."   Novella contends that his WC Claim did not accrue until his claim was deemed denied 90 days after its filing via Mr. Pauk's November 4, 2004 letter to the Fund.

This dispute reduces to the issue of whether the August 28, 1997 rejection of Novella's miscalculation claim – which was a different claim than his WC Claim - sufficed to begin the

6

limitations period on his WC Claim, which was not presented to the Fund until November 4, 2004.

The statute of limitations for ERISA actions begins to run "upon a clear repudiation that is known, or should be known, to the plaintiff, regardless of whether the plaintiff has formally applied for benefits." Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48 (2d Cir. 1999); see also Novella III, at 544-545 ("An ERISA cause of action based upon the denial of a claim for benefits accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries."). Because, in August 2004, the Fund had not yet had an opportunity to decide Novella's WC Claim, Novella I dismissed that claim "without prejudice to enable Novella to exhaust." Novella I, at *7.[4] Without a decision by the Fund on Novella's WC Claim, Novella argues, there could be no repudiation, and without a repudiation, his cause of action could not have accrued for limitations purposes. In that light,

---

[4] Then-Chief Judge Mukasey found "nothing in the record to suggest that the plan administrator ever determined, or even had an opportunity to determine, whether Novella was entitled to pension credits based on his receipt of workers' compensation benefits . . . Accordingly, although the plan administrators reached a determination about the benefits rates that applied to Novella's pension credits, they never had the occasion to determine whether Novella's pension credits should have been increased based on the fact that, unbeknownst to them, Novella was collecting workers' compensation benefits. The plan administrators therefore did not make a determination about Novella's entitlement to pension credits based on his receipt of workers' compensation benefits." Novella I, at *6.

7

Novella contends that his claim did not accrue until its effective repudiation after November 4, 2004.[5]

But because Novella claims that his benefits were miscalculated, with resulting underpayment, rather than denied, "the relevant date for fixing the accrual of such a claim is when plaintiff was put on notice that defendants believed the method used to calculate his disability pension was correct. Thus, the claim does not begin to run until [plaintiff] inquires about the calculation of his benefits and the Plan rejects his claim that the benefits were miscalculated."  Novella III, at 545.

Novella did write to the Fund to protest the calculation of his pension benefit, and he received notice on May 9, 1996 that Defendants believed that their calculation of his pension benefit was correct.  (Defs.' 56.1, ¶ 20.)  After Novella made further inquiries, on August 28, 1997, Defendants once again rejected his claim that his benefits were miscalculated.  (Id., ¶ 21.)  It follows that his claim accrued, and the limitations period began to run on May 9, 1996 or, at the very latest,

_____

[5] Novella also argues that, in determining that Novella had failed to exhaust his WC Claim, Novella I decided that that claim had yet to accrue for statute of limitation purposes; as such, Novella argues, the law of the case precludes this Court from finding otherwise.  This argument erroneously equates the exhaustion of administrative remedies with the accrual of a claim for statute of limitations purposes.  These are distinct concepts, and Novella I's dismissal of the WC claim as unexhausted said nothing about the accrual of that claim.  See, e.g., Reid v. Local 966 Pension Fund, No. 03 Civ. 9231 (LAP), 2004 U.S. Dist. LEXIS 18600 (S.D.N.Y. 2004) (dismissing an accrued ERISA claim as unexhausted).

8

August 28, 1997 - over seven years before Novella filed the
instant action.[6]

The Court is not persuaded by Novella's contention that,
because his initial miscalculation claim failed to raise the
particular issues and arguments on which his WC Claim is based,
the Fund's rejection of the former did not serve to begin the
limitations period with respect to the latter. See Miele v.
Pension Plan of New York State Teamsters Conference Pension &
Retirement Fund, 72 F.Supp.2d 88, 100 (E.D.N.Y. 1999) (rejecting
plaintiff's argument that defendants' repudiation of his
miscalculation claim did not serve to repudiate particular
claims - specifically, a claim for additional pension credits
based upon receipt of workers' compensation benefits - with
which defendants had not been presented). As Miele explained,
were courts to accept contentions like Novella's, "plaintiffs
would be free to file ERISA claims whenever they concocted novel
legal theories, no matter how many years after benefits had been
miscalculated and plaintiffs' complaints about miscalculation

---

[6] While Novella's WC Claim was timely the first time it was filed, in March
2002, its dismissal without prejudice in August 2004 did not serve to toll
the statute of limitations. See, e.g., Brennan v. Kulick, 407 F.3d 606 (3d
Cir. 2005) ("A statute of limitations is not tolled by the filing of a
complaint subsequently dismissed without prejudice, as the original complaint
is treated as if it never existed. Therefore, the dismissal of a complaint
without prejudice after the statute of limitations has run forecloses the
plaintiff's ability to remedy the deficiency underlying the dismissal and
refile the complaint.") (quotations and citations omitted); Rinieri v. News
Syndicate Co., 385 F.2d 818, 821 (2d Cir. 1967) ("a dismissal without
prejudice permits a new action assuming the statute of limitations has not
run").

had been repudiated;" such a rule would "undermine the very

principle of finality for which statutes of limitations are

maintained."  Id.

Accordingly, the Court finds that Novella's claim is time-

barred.

## 2. Novella's Claim

Even if Novella's claim were timely, it would fail on the

merits.

### a. Standard of Review

The Court reviews a denial of pension benefits de novo

unless the relevant benefit plan gives its administrator

discretionary authority to determine eligibility for benefits or

to construe the terms of the plan.  Mario v. P & C Food Markets,

Inc., 313 F.3d 758, 763 (2d Cir.2002).  If the plan does include

such a grant of discretionary authority, a reviewing court

should defer to that authority and evaluate the plan

administrator's decisions under an arbitrary-and-capricious

standard.  Id.  The scope of judicial review under an arbitrary-

and-capricious standard is narrow: "A court may overturn a plan

administrator's decision to deny benefits only if the decision

was 'without reason, unsupported by substantial evidence or

erroneous as a matter of law.'"  Celardo v. GNY Auto. Dealers

Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir.2003)

(citation omitted).  "[W]here the trustees of a plan impose a

10

standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." Gallo v. Madera, 136 F.3d 326, 330-31 (2d Cir.1998) (quotations omitted).

In this case, Novella urges the Court to review Defendants' interpretation and application of the Plan, as manifested in the Decision, de novo, while Defendants argue that the arbitrary-and-capricious standard applies.  Because Defendants prevail under either standard, however, the Court need not determine which standard applies here. See Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 110 (2d Cir.2003) (declining to resolve applicable standard when ERISA plaintiff would prevail under either standard); Novella I, at *3 (same).

### b. Novella's Claim

Even under a de novo standard of review, Novella's claim fails.  As noted above, based on their consideration of seven Plan provisions and two SPD provisions, the Trustees concluded, "[b]ecause Mr. Novella was not in Covered Employment while he received workers' compensation benefits, under the terms of the Plan he could not earn additional Pension Credits" for that time or on account of that receipt.  (McGovern Aff., Ex. 12.)

11

The Court agrees with the Decision and finds that it comports with the plain terms of the Plan.  Relying on Plan Section 1.15(b), Novella claims that he is entitled to 501 Hours of Service on account of his receipt of workers' compensation benefits, and that this entitles him to an additional $20.00 per month in pension benefits effective October 1, 1995.  As explained in the Decision, however, while Plan Section 1.15(b) credits Novella with up to 501 "Hours of Service" "on account of a period of time during which no duties are performed . . . due to incapacity including disability," this credit affects neither his accrued pension credits nor the amount of his pension benefit.[7]  (Plan, Pauk Aff., Ex. A, at 26.)  This is because Plan Section 1.19 defines "Pension Credits," rather than "Hours of Service," as "the units upon which the amounts of the pension benefits provided by the Plan are computed."  (Id., at 27.)

Moreover, the SPD explicitly rules out "any way an employee may receive Pension Credit for time when he is not in Covered Employment."  (Id., at 13.)  Rather, the SPD instructs that, for periods after December 31, 1980, "A participant will receive units and tenths of [pension] credit on the basis of his Hours

---

[7] As noted above, "while under the terms of the Westchester Plan Mr. Novella is entitled to vesting credit as a result of his receipt of workers' compensation benefits in 1995, the grant of additional vesting credits will not affect the amount of his pension benefits."  (McGovern Aff., Ex. 12.) Under ERISA, benefit accrual is "the rate at which an employee earns benefits to put in his pension account," while benefit vesting relates to an employee's right to a pension "by virtue of his having fulfilled age and length of service requirements."  Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 749 (2004).

of Service *in Covered Employment…*"   (Id., at 9) (emphasis

added).   And Plan Section 4.01 states that Pension Credits are

earned "on the basis of hours of Work in Covered Employment," or

"hours of employment."   (Id., at 37, 39.)   Pursuant to Plan

Section 1.09, "'Covered Employment' means employment of an

Employee by an Employer for which the Employer is obligated by

its agreement to contribute to the Fund."   (Id., at 25.)   Here,

Novella admittedly was not in Covered Employment during the time

he received workers' compensation benefits.   (See Complaint, ¶

10 ("Novella . . . was in covered employment under the Plan from

1962 until March 22, 1995, when at age 61 he suffered a

disabling accident on the job on account of which he continues

to receive workers' compensation benefits."))

This is fatal to Novella's claim: the plain terms of the

Plan preclude Novella from receiving Pension Credits for time

outside of Covered Employment.[8]   It directly follows that Novella

did not and could not have earned Pension Credit during the time

he received workers' compensation benefits.   On this basis, the

Decision denied Novella's claim.   Upon its de novo review of

---

[8] An ERISA plan need not award pension credits for time during which a
participant received workers' compensation benefits. See, e.g., Campanella
v. Mason Tenders' District Council Pension Plan, 299 F.Supp.2d 274, 286-288
(S.D.N.Y. 2004) (rejecting plaintiffs' claim that  time during which they
received workers' compensation from an insurer counted towards pension
credits; "Neither the Plan nor the Department of Labor envisioned awarding
employees pension credits for time during which they were receiving a
disability pension.").

that Decision, the Court does the same and grants Defendants'

motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court DENIES Novella's

motion for summary judgment and GRANTS Defendants' cross-motion

for summary judgment.  Accordingly, the Court dismisses and

directs the Clerk of Court to close this case.


SO ORDERED:

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**


Dated:    New York, New York
          March 26, 2009

14